AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| SAMUEL ALCALA | ) | Case No. |
| | ) | 3:21-mj-1307-JBT |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **May 24, 2021** in the county of **Duval** in the **Middle** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(A) | Possession with intent to distribute 500 grams or more of mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

U.S. Postal Insp. Service, Postal Insp. Keith Hannon
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/25/21

_____
*Judge's signature*

City and state: Jacksonville, Florida

Joel B. Toomey, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Keith P. Hannon, being first duly sworn, state as follows:

1. I am a United States Postal Inspector and have been so employed since 2006. I have completed a twelve-week basic training course in Potomac, MD, which included training in the investigation of narcotics trafficking via the United States Mail. Additionally, I have completed a one-week advanced training course specifically focused on narcotics trafficking via the United States Mail. I have been assigned the investigative duty of investigating the trafficking of illegal narcotics via the U.S. Mail in Jacksonville, Florida for approximately 8 years. Furthermore, in the course of assisting in past investigations, I have spoken with other Postal Inspectors who have substantial experience related to investigating schemes that utilize the U.S. Mail and the evidence that can be obtained as a result. I am currently assigned to the Miami Division, Jacksonville Domicile, specifically to the Multi-functional Team, which is responsible for investigating narcotic violations involving the United States Mail.

2. I have participated in and conducted investigations of violations of various state and federal criminal laws, including violations of Titles 21 and 18 of the United States Code, such as: unlawful possession with intent to distribute controlled substances; distribution of controlled substances; importation of controlled substances; conspiracy to import, possess, and distribute controlled substances; and money laundering. These investigations have resulted in arrests of individuals who have smuggled, received, and distributed controlled substances, including cocaine,

marijuana, heroin, and methamphetamine, and the arrest of individuals who have laundered proceeds emanating from those illegal activities. These investigations have also resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs.

3. I am familiar with the operation of illegal drug trafficking organizations in the Jacksonville Florida area, specifically in regard to the use of the US Mail by those organizations.

4. I am familiar with the ways in which narcotic traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, and the use of telephones and digital devices to facilitate their illegal acts. My training and experience as a United States Postal Inspector and my conversations with other Postal Inspectors, other Federal, state and local investigators familiar with narcotics trafficking and money laundering matters, form the basis conclusions set forth below, which I drew from the facts set forth herein.

### Subject and Offense

5. This affidavit is in support of a Criminal Complaint for the arrest of Samuel Alcala for possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).

## Basis For Facts Contained In this Affidavit

6. I make this affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information from the following sources:

   a. Oral and written reports about this investigation and others that I have received from federal and state law enforcement officers, including reports from United States Postal Inspectors and Special Agents with Homeland Security Investigations (HSI);

   b. The controlled delivery of parcel containing methamphetamine; and

   c. The arrest of Samuel Alcala and the seizure of methamphetamine.

7. Because of my training and experience, I know that the state of California is a common source area for controlled substances, which are shipped throughout the country, including marijuana, cocaine, and methamphetamine. Once controlled substances are obtained in California, the drug trafficking organization's next step is to smuggle/transport the finished product to various points throughout the United States, using methods such as mail services (e.g., United State Postal Service, Federal Express, DHL, and United Parcel Service), airlines, and large freight carriers. Based on my training and experience, I am familiar with the common methods used in the shipment of drugs via mail services. These methods include but are not limited to the following:

3

a. The senders typically conceal the drugs within packages and boxes (hereinafter, referred to as "parcel"), and will often times further attempt to conceal the drugs within additional packaging once inside the outer parcel;

b. These packages in many instances contain a fictitious return address, incomplete return address, no return address, a return address that is the same as the recipient address or a return address that does not match the city from which the parcel was mailed. The senders will also try to hide their true identity, using either totally fictitious names and address, or mutations of their real names and addresses, or a combination of fiction and mutation. A shipper will sometimes mail the parcel containing controlled substances from an area different from the return address on the parcel because either 1) the return address is fictitious; and/or 2) the shipper is attempting to conceal the actual location from which the parcel was mailed. These practices are used by narcotics traffickers to hide from law enforcement officials the true identity of the person(s) shipping and/or receiving the drug parcels;

c. The senders typically favor one type of parcel, and will follow the same routine regarding packaging, labeling and mailing if the routine has proven successful, that is, the drugs have arrived at their destination without law enforcement detection;

d. The senders prefer to ship the drugs via overnight and express mail with a guaranteed delivery time. This method delivers the drugs to the receiver in the

4

shortest amount of time, and senders consider it to be the safest way to avoid law enforcement detection;

e. Drug trafficking groups often ships multiple parcels containing drugs at one time, in the belief that the odds are that if one or more parcels are seized by law enforcement, the others will be delivered successfully. Also, individuals involved in trafficking of controlled substances through the US Mail will typically send and receive Express and Priority mailings on more frequent basis than a normal postal customer. Drug traffickers exhibit a higher rate of using Express and Priority mail due to their frequent exchange of controlled substances and the proceeds from the sale of these controlled substances;

f. Drug trafficking groups commonly use the tracking numbers on the parcels to stay apprised of the location and status of the shipment. These tracking numbers are unique numbers designated by the mail service and assigned to each parcel. Most mail services have internet sites and toll-free telephone numbers which can be accessed by anyone, who can then enter the tracking number of a specific parcel. Once the tracking number is entered, the location and status of the parcel is made available. By this method, the drug trafficking group can track the drug shipments, determine whether the drugs have been delayed, and oftentimes correctly deduce that a parcel has been intercepted by law enforcement; and

5

g. The shipper will often, but not always, send the drugs to a recipient who has agreed to accept the drugs. The senders also try to conceal a recipient's true identity by using a fictitious name or a mutation of the name and will mail the parcel to various kinds of locations, e.g., residences, businesses, and apartments.

### Facts Establishing Probable Cause

8. On May 20, 2021, I was reviewing USPS electronic mailing records targeting parcels mailed from the Calexico, CA area being mailed to Jacksonville, FL area. The purpose of reviewing the electronic records was to identify parcels suspected of containing narcotics. While reviewing the records, I located data for a Priority Mail parcel bearing tracking number 9505 5138 1164 1139 5370 41 (the East 14th Street parcel) that was currently enroute to Jacksonville, FL from Calexico, CA. Upon reviewing available electronic USPS records, I suspected the parcel of possibly containing narcotics. The parcel listed a return address of "Priscila Flores, 992 Grant St., Calexico, CA 92231 and a delivery address of "Daniela Flores, 1518 14th St. E, Jacksonville, FL 32206." On May 21, 2021, I intercepted the East 14th Street parcel at the Jacksonville Network Distribution Center located at 7415 Commonwealth Avenue, Jacksonville, FL 32099. I reviewed the East 14th Street parcel and identified the parcel, based on my training and experience as possibly containing controlled substances. The East 14th Street parcel was mailed from Calexico, CA 92231 on May 19, 2021 and

weighed 7 pounds and 8 ounces. The East 14th parcel cost $21.90 in postage and was scheduled for expected delivery on May 22, 2021.

9. On May 20, 2021 and May 21, 2021, I continued my investigation of the East 14th Street parcel. A review of the East 14th Street parcel revealed it displayed the following characteristics that fit the profile of known mailings containing controlled substances, including:

    a. A signature was not required for delivery.

    b. The parcel displayed a recipient by the name of "Daniela Flores." I was unable to locate a real person with that name associated with the parcel delivery address after researching the information on the Florida Department of Highway Safety and Motor Vehicle Driver and Vehicle Information Database (DAVID) and CLEAR (database containing the personal identification information of subjects throughout the United States and used by USPIS in criminal investigations).

    c. The parcel displayed a sender name of "Priscila Flores." I was able to locate a person with a similar name of "Priscilla Flores" as being associated with the listed return address after searching CLEAR. CLEAR indicates that the name "Priscilla Flores" was last associated with the listed return address in April 2016.

    d. A query of USPS records revealed the address of 1518 14th Street East, Jacksonville, FL 32206 had received two additional parcels from Calexico, CA in April and May 2021 that weighed approximately the same as the East 14th Street parcel.

7

Based on my training and experience, the pattern of parcels is consistent with drug trafficking via the USPS.

10. On May 21, 2021, I contacted the United States Border Patrol (USBP) to request the assistance of a narcotics detection canine. Officer John Reid and his canine "Aragon" responded to the USPIS Jacksonville Domicile, to conduct an exterior examination of the East 14th Street parcel. Officer Reid and his narcotics detection canine conducted an exterior examination of the East 14th Street parcel bearing label number 9505 5138 1164 1139 5370 41. The East 14th Street parcel was placed individually, label side down, among five other control parcels not containing narcotics. I observed as "Aragon" alerted on the East 14th Street parcel but did not alert on any of the other control parcels. Officer Reid confirmed to me that "Aragon" did alert for the scent of controlled substances on the East 14th Street parcel.

11. On May 21, 2021, I obtained a search warrant authorizing the search of the East 14th Street parcel (case number 3:21-mj-1301-JBT). The search warrant was executed the same day and the East 14th Street parcel was found to contain approximately 2.99 kilograms of a white crystalline substance consistent with methamphetamine (with wrappings). The substance field tested positive for the presence of methamphetamine. The methamphetamine was concealed inside clear plastic wrap and brown paper.

12. Through the use of USPS databases, I identified two USPS Priority Mail parcels that were previously delivered to the East 14th Street address from Calexico, CA. Priority Mail parcel 9505 5138 1164 1118 5312 20 was delivered on April 30, 2021. It weighed 7 pounds 1 ounce and cost $21.90 in postage. Priority Mail parcel 9505 5138 1163 1134 3564 64 was delivered on May 17, 2021. This second parcel weighed 7 pounds 7 ounces and also cost $21.90 in postage. Based on my training and experience, the pattern of USPS parcels being delivered to the residence is consistent with a pattern of narcotics trafficking.

13. On May 24, 2021, I obtained an anticipatory search warrant authorizing the search of the Subject Location located at 1518 14th Street East, Jacksonville, FL 32206 (case number 3:21-mj-1303-JBT). On May 24, 2021, Postal Inspectors and law enforcement agencies providing assistance established surveillance at the Subject Location at approximately 12:30 p.m. in order to conduct a controlled delivery of the East 14th Street parcel containing methamphetamine. For purposes of the controlled delivery, approximately 1 kilogram of methamphetamine was placed back inside the East 14th Street parcel and sham was also placed into the parcel to keep the weight of the East 14th Street parcel consistent with the original shipping weight. The remaining methamphetamine was secured as evidence by Postal Inspectors. At approximately 12:50 p.m., a U.S. Postal Inspector acting in an undercover capacity as a USPS Letter Carrier arrived at the Subject Location wearing a USPS uniform and operating a white

USPS delivery van. The undercover Postal Inspector knocked on the front door of the Subject Location. After knocking, a white male, later identified as William Jack Edward Davis, opened the front door of the residence and accepted the East 14th Street parcel containing the methamphetamine for delivery. The undercover Postal Inspector confirmed to me that Davis accepted delivery of the East 14th Street parcel and entered the Subject Location with the East 14th Street parcel containing the methamphetamine.

14. While maintaining surveillance of the residence after the controlled delivery of the East 14th Street parcel, agents received an alert from a transmitter that was placed inside the East 14th Street parcel, indicating the East 14th Street parcel had been opened. After receiving the alert signal, at approximately 1:25 p.m. on May 24, 2021, agents executed the anticipatory search warrant. During the execution of the search warrant, agents detained Davis, Selena Noreen Lemon, Kevin Michael Pressley, and Desiree Nichelle Lee. It should be noted that at the time the anticipatory search warrant was executed, Lee exited the residence holding the infant child of Lemon (approximately 5 weeks old).

15. During the execution of the anticipatory search warrant, agents recovered the East 14th Street parcel in the front left bedroom of the residence. It was determined during the course of the investigation that the front left bedroom belonged to Pressley and Lee. Evidence of narcotics use and the sale of narcotics was located in the front left bedroom along with indicia that the room belonged to Pressley and Lee. Agents

located various devices used to smoke methamphetamines, digital scales, approximately 221 grams of suspected methamphetamine and 16 grams of marijuana from the bedroom of Pressley and Lee.

16. During a post-*Miranda* interview of Lee, Lee stated that she was receiving the East 14th Street parcel for an individual she knew as "Auntie Tay," later identified as Olawatti Nkosi Kazembe Fossette Kennedy. At approximately 3 p.m., Kennedy arrived at 1518 E 14th Street sitting in the passenger seat of a silver Nissan sedan. Agents observed the silver Nissan sedan pull in front of the residence and then pull into the driveway of the residence and park. Agents observed Lee walk from the front porch of the residence with the East 14th Street parcel containing the methamphetamine to the front passenger window where Kennedy was sitting. Agents observed Lee hand Kennedy the East 14th Street parcel through the open front passenger window. Kennedy then placed the East 14th Street parcel in the rear passenger compartment of the vehicle. Agents approached the vehicle and detained Kennedy in the front passenger seat. While being detained, a .38 caliber Davis Industries firearm (serial number D054642) was located in Kennedy's bra. NCIC records revealed that Kennedy is a convicted felon and the firearm was seized. Ronald Collins, who was driving the vehicle was also detained. Collins was later arrested by the Jacksonville Sheriff's Office on unrelated narcotics possession charges.

17. During a post-*Miranda* interview with Kennedy, Kennedy stated that she was receiving the East 14th Street parcel for an individual he knew as "Bam," later identified by agents as Samuel Alcala. Kennedy stated that Alcala had paid her approximately $400 in the past for receiving a USPS parcel and expected to be paid $400 again from Alcala for receiving and delivering the East 14th Street parcel. Kennedy agreed to cooperate with agents and placed two controlled calls to Alcala. The calls were both recorded, but upon playback, only the second call is audible. During the calls, Kennedy explained to Alcala that Lee was in route to her to bring her the East 14th Street parcel and that Alcala should meet her at the McDonalds at the intersection of Emerson Street and Philips Highway to retrieve the East 14th Street parcel. During the call with Alcala, Alcala stated to Kennedy that he was concerned that the "Feds" were seen at Lee's house on 14th Street. Kennedy explained to Alcala that the police were not at Lee's house and that everything was fine, and it was safe to come pick up the parcel. Alcala agreed and stated that he would call and arrive in thirty minutes. At approximately 7:30 p.m., Alcala arrived at the McDonalds driving a black BMW with a temporary license plate. At approximately 7:35 p.m., agents observed Kennedy exit the McDonalds carrying the East 14th Street parcel and meet with Alcala in his vehicle in the McDonalds parking lot. A short time later, agents observed Kennedy exit Alcala's vehicle without the East 14th Street parcel and walk

back into McDonalds. At this time, agents approached Alcala in his vehicle and detained him.

18. Agents conducted a recorded field interview of Alcala. Post-*Miranda*, Alcala stated he was meeting with Kennedy to pick up a box that he was expecting. Alcala was asked what was in the box, to which he replied the box contained approximately 4 pounds of methamphetamine. Alcala was asked how he knew the parcel contained methamphetamine. Alcala replied he had previously received 5 to 6 other USPS parcels containing multiple pounds of methamphetamine from friends in California. Additionally, Alcala stated that Kennedy provides him with the addresses to which they have the parcels containing methamphetamine mailed. Alcala then provides those addresses to those responsible for mailing the methamphetamine from California to Jacksonville. Alcala stated he has been facilitating the trafficking of methamphetamine from California to Jacksonville for the past 3 to 4 months utilizing USPS. Alcala advised he purchases the methamphetamine for approximately $2,000 per pound and sells it for up to $5,000 per pound. Alcala told agents that he and Kennedy facilitate sending the money back to California via Wal-Mart and Chase Bank business accounts. Alcala stated that once he obtains a parcel containing methamphetamine, he opens the parcel, counts the bundles, and weighs it to confirm the shipment of methamphetamine is correct. Alcala stated the previous parcels he received contained anywhere from 2 to 4 pounds of methamphetamine. During the interview, Alcala

advised he had several thousand dollars in his pocket and further stated that the cash was comingled between narcotics money and income from being employed sand blasting U.S. Navy Ships. Agents seized the currency which totaled $7,682.00 in cash. Agents seized two cell phones from Alcala as well.

19. I conduced a query of NCIC records pertaining to the criminal history of Alcala. The query revealed that Alcala has a history of arrest in California. The NCIC query also revealed that Alcala was arrested in 2012 by Customs and Border Protection Murrieta Station for "Manufacturing, Distributing or Disbursing of Any Controlled Substance." The NCIC record of Alcala revealed he was convicted in January 2014 and sentenced to serve 37 months in prison and 36 months of supervised release. During the interview of Alcala, he stated his arrest and conviction detailed above pertained to him being arrested near the Mexico border with 3 pounds of methamphetamine.

20. Based on the foregoing, there is probable cause to believe that Samuel Alcala has committed a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), that is, he knowingly and intentionally possessed with intent to distribute 500 grams or more of

a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

_K. P. Hannon_
Keith P. Hannon #6279
Postal Inspector
US Postal Inspection Service

Sworn to and subscribed before me this **25** day of May, 2021

_M. B. T._
JOEL B. TOOMEY
United States Magistrate Judge

15